UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IDFA, L.L.C. f/k/a/ ICDP, LLC, a
Michigan Limited Liability Company,
and FADI K. BARADHI,

                         Plaintiffs,         No. 07-CV-11622-DT

vs.                                               Hon. Gerald E. Rosen

CAROL ANN WILSON,
                        Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on     February 7, 2008

        PRESENT:  Honorable Gerald E. Rosen
                            United States District Judge

I. INTRODUCTION

      This action involving a request for declaratory judgment regarding certain intellectual property and a claim of defamation is presently before the Court on Defendant Carol Wilson's Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiffs have responded to Defendant's Motion. Having reviewed and considered the parties' motions, briefs and supporting documents, the Court finds that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's

1

ruling.

## II. FACTUAL BACKGROUND

In 1993, Defendant Carol Ann Wilson founded the Institute for Certified Divorce Planners, Inc. ("ICDP") as the company's sole shareholder. A divorce planner is an individual with a financial background, such as a financial planner or a CPA, who provides clients undergoing a divorce with advice on marital assets and asset division. ICDP designed, developed, marketed and provided educational services, books and computer software programs, to professionals working in the area of divorce. After enrollees in the program completed a training course, they earned the designation "Certified Divorce Planner." At the time, ICDP was the only institute of its kind in North America and purportedly became the leader in the divorce planning industry. *See* Affidavit of Fadi Baradhi, Plaintiff's Ex. 2.

In October 1998, Wilson and Alston Financial Applications, LLC, now known as "IDFA, L.L.C.," entered into an Asset Purchase Agreement for the purchase of all of the assets of ICDP.[1] From its inception and continuing to this date, IDFA has maintained its principal place of business in Southfield, Michigan. Contemporaneously with the execution of the Asset Purchase Agreement, Wilson and IDFA also entered into an Employment Agreement which provided that Wilson would be employed as president of

---

[1] Upon execution of the Asset Purchase Agreement, Akston Financial Applications, LLC changed its name to "ICDP, LLC". The company thereafter changed its name to IDFA, L.L.C., which is the named principal Plaintiff in this action.

IDFA for a $100,000 annual base salary, plus incentive bonuses for certain marketing activities. *See* Plaintiff's Ex. 5. As additional consideration, IDFA loaned Wilson $180,000 to assist her in paying off some non-ICDP/IDFA personal debts which was to be repaid to the company by way of IDFA marketing incentive bonuses if Wilson qualified for such bonus incentive payments. *Id.*[2] Wilson also executed a promissory note evidencing the loan. *See* Plaintiff's Ex. 6.[3]

Thereafter, although Wilson from time to time would come to work at IDFA's Southfield office, she did most of her work from the company's Boulder, Colorado office. In 1999, however, IDFA eliminated its incentive bonus program. Then, in 2001, IDFA closed its Colorado office. Wilson thereafter left IDFA.

On December 18, 2001, claiming that IDFA's actions made it impossible for her to repay IDFA the $180,000 loan, Wilson, and her co-signatories on the Note, her husband Emerson Fullmer and their company, Red Mountain Movies, Inc., filed a complaint for declaratory relief in Colorado state court against IDFA seeking a judgment relieving them from their duty under the Promissory Note. The case was removed to the

---

[2] The Employment Agreement set forth the circumstance under which Wilson would qualify for incentive bonus payments and further provided that if she earned such bonuses, 50% of the payment of them would be retained by the company to pay down Wilson's $180,000 loan.

[3] Wilson's promissory note was co-signed by her husband, Emerson Fullmer, who signed the Note both in his individual capacity and as president of Red Mountain Movies, Inc. (Red Mountain Movies was a company owned by Wilson and Fullmer. Fullmer was the company's president and Carol Wilson was its corporate secretary.)

3

U.S. District Court for the District of Colorado. IDFA subsequently filed a Motion to Dismiss for lack of personal jurisdiction and *forum non conveniens*. The Colorado District Court thereafter ordered the case transferred to the District Court for the Eastern District of Michigan under 28 U.S.C. § 1404(a), principally based on the fact that the Promissory Note explicitly provided that the parties consented to jurisdiction in Michigan if any case arose from the note. The transferred case was assigned to this Court. *See Wilson v. ICDP and John Hantz*,[4] E.D. Mich. No. 02-72274. The case was eventually dismissed after Wilson and her husband filed for Chapter 7 bankruptcy.[5]

With regard to the issues in the present action, prior to entering into the Asset Purchase Agreement with IDFA, Wilson had authored a book <u>Survival Manual for Women in Divorce</u>. The book was published by "ICDP Publishing" in 1990 and was subsequently revised four times. IDFA contends that it was always assumed by the parties that the rights to this book were included in the Asset Purchase Agreement signed by the parties in 1998. Although the book was not explicitly listed in the Agreement, the Agreement includes "intellectual property" among the assets purchased by IDFA and further states that the list of specific assets contained in the Agreement was not exclusive. Additionally, the Employment Agreement executed the same date states with respect to

---

[4] Hantz was, at the time of the 1998 Asset Purchase Agreement, and is now, the owner of IFDA.

[5] Ultimately, the Bankruptcy Court allowed Wilson to discharge all of her debts, including what she owed to IDFA on the Promissory Note.

"Book and Product Sales" only that Plaintiff may sell "books, videos and audio tapes that are *in existence* as of this Agreement is executed," but disallows her writing, copyrighting or publishing of any books on a going forward basis. [Employment Agreement, §10(c), Plaintiff's Ex. 7.] The Employment Agreement further provided that anything Wilson "discovered or invented related to the business of [IDFA]. . . shall be the exclusive property of the Company" and required that Wilson "assign to the Company full and exclusive rights to any such discovery or invention, and to any trademark, copyright or patent to the full end of the term of such trademark, copyright or patent." *See id.* § 8.

In 2006, Plaintiff Fadi K. Baradhi, the current president of IDFA, authored a book called The IDFA Survival Divorce Guide. Plaintiffs admit that a significant portion of the material in this book was derived from Wilson's Survival Manual for Women in Divorce, all rights to which they claim became theirs upon their purchase of the assets of ICDP.

On December 15, 2006, Wilson filed a grievance with the Certified Financial Planner Board of Standards against Baradhi alleging that his book infringed on the copyright of her book.[6] In response, IDFA and Baradhi filed the instant action requesting (1) a declaratory judgment finding that they purchased the rights to Wilson's book when they entered into the Asset Purchase Agreement with her in 1998 and, therefore, have not infringed upon any of Wilson's intellectual property rights; and (2) a monetary judgment

---

[6] The Court notes that Defendant did not list her copyright to the book as an asset in her bankruptcy. *See* Bankruptcy Application, Plaintiffs' Ex. 7.

for defamation based upon Wilson's allegedly false accusations of copyright infringement made to the Certified Financial Planner Board of Standards.

On May 5, 2007, Wilson sent a letter to the Court asking that the Court consider the letter her motion to dismiss this action for lack of jurisdiction.[7]

### III.  DISCUSSION

A.   STANDARDS APPLICABLE TO MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  However, when the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.,* quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  The court must then consider the pleadings and documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

In the Sixth Circuit, a personal jurisdiction analysis involves a two-fold inquiry: (1) do the defendant's acts fall within the applicable long-arm statute, and (2) does the

---

[7] When Defendant sent her letter to the Court, the case was assigned to Judge Anna Diggs Taylor.  The case was subsequently reassigned to this Court as a companion case to Wilson's 2002 action.  Wilson then re-filed this letter on October 22, 2007, reasserting her claim that the case should be dismissed due to lack of personal jurisdiction.

exercise of jurisdiction over the defendant comport with the requirements of due process. *Intera*, 428 F.3d at 615. In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations. *Id.* at 615.

B.      MICHIGAN'S "LONG-ARM" STATUTE

Michigan's "long-arm" statute extends "limited" jurisdiction over nonresident individuals pursuant to M.C.L. § 600.705:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state;
>
> * * *
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the Defendant.

However, limited jurisdiction extends only to claims arising from the defendant's activities that were either in Michigan or had an in-state effect. *Neogen*, 202 F.3d at 888.

M.C.L. § 600.705(1) provides for limited jurisdiction when an defendant engages in the transaction of any business within Michigan. When construing identical language in M.C.L. § 600.715(1) -- the companion long-arm statute applicable to non-resident corporations -- the Michigan Supreme Court stated that "the word 'any' means just what it says. It includes 'each' and 'every'. . . . It comprehends the 'slightest." *See Lanier v.*

7

*American Bd. of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988) (quoting *Sifers v. Horen*, 385 Mich. 195, 199 n. 2 (1971)). This interpretation applies with "equal force to section 705." *Theunissen v, Matthews*, 935 F.2d 1454, 1464 (6th Cir. 1991). In *Lanier*, the Sixth Circuit determined that the Illinois-based defendant's exchange of correspondence and telephone calls with the plaintiff in Michigan, including its collection of an application fee from the plaintiff, constituted a transaction of business in Michigan pursuant to the long-arm statute.

In the present case, Defendant's connections with Michigan "arise out" of the contracts she made with IDFA and the business she engaged in with the company. Defendant (1) sold her company to IDFA, a Michigan LLC with its principal place of business in Michigan, through the Asset Purchase Agreement; (2) entered into an employment contract with IDFA; (3) traveled to and from Michigan to perform duties within the realm of her employment; and (4) collected a salary from IDFA. These actions certainly satisfy the "slightest" transaction of business requirement discussed above in *Lanier*.

Alternatively, the Court may also exercise jurisdiction over Defendant Wilson pursuant to M.C.L. § 600,705(5), According to Defendant's Employment Agreement signed on October 7, 1998, Defendant was to serve as the company's president from October 7, 1998 until December 31, 2004. Plaintiffs allege that Defendant routinely visited Michigan to perform her duties as president of IDFA. Considering these facts in a

light most favorable to the Plaintiffs, Defendant rendered services in Michigan pursuant to her employment contract.

C.  DUE PROCESS

In order to satisfy the requirements of due process, a defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir.. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts exist when "then defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp, v. Woodson*, 444 U.S. 286, 297 (1980). Further, it is necessary that the defendant "purposefully avail [her]self of the privilege of conducting activities within the form state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

A court may exercise either "general" or "specific" jurisdiction over a non-resident defendant. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). General jurisdiction exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (citing *Third Nat'l Bank of Nashville v. WEDGS Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Plaintiffs do not contend that a finding of general jurisdiction is proper

9

in this case. Plaintiffs do assert, however, that "specific" jurisdiction exists over Defendant Wilson. Exercising specific personal jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the state. *Intera*, 428 F.3d at 516.

The Sixth Circuit has utilized a three-part test in addressing the due process requirements for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera, supra* (quoting *Souther Machine Company v. Mohasco Industries, Inc.,* 401 F.3d 374, 381 (6th Cir. 1968).

1. Purposeful Availment

The first step of the *Intera/Mohasco* test requires that a Defendant reach beyond his own state and purposefully avail himself of the privilege of "exploiting the other state's business opportunities." *W.H. Froh, Inc. v. Thomas Domanski*, 252 Mich. App. 220, 230, 651 N.W.2d 470 (2002). "Purposeful availment" is the "constitutional touchstone" of personal jurisdiction, and is present where the defendant's contacts with the forum state "proximately result from action by the defendant himself that creates a 'substantial connection' with the forum state." *Neogen, supra*, 282 F.3d at 889 (quoting *Burger King*, 471 U.S. at 475).

In *Chattanooga Corporation v. Klingler*, 704 F.2d 903 (6th Cir. 1983), the Sixth Circuit held that a California defendant, who was president of a California corporation, purposefully availed himself of the privileges of the forum state (Tennessee) when he directed and negotiated the sale of the corporation to the plaintiff, a Tennessee corporation, in the forum state, visited the forum state for the purpose of negotiating the sale, and entered into an employment contract with the plaintiff, which was to construed in accordance with the forum state's laws. The Sixth Circuit found personal jurisdiction over the defendant despite the fact that it was the plaintiff that initiated the contract negotiations and the California corporation had never engaged in business in Tennessee before the negotiations began.

The instant case is substantially similar to *Chattanooga*. Defendant in the instant action negotiated the sale of her company with the Plaintiffs, traveled to Michigan to execute the Asset Purchase Agreement, and entered into an employment contract with the Plaintiffs to serve as president of the company. Further, both the Asset Purchase Agreement and the Employment Agreement contain choice of law provisions providing that the agreements are to be construed in accordance with Michigan law.

Although *Chattanooga* originated in the District Court for the Eastern District of Tennessee and involved application of Tennessee law, the case is persuasive in showing that the Defendant's contacts in this case amount to purposefully availing herself of Michigan's business opportunities and benefits. The Sixth Circuit was interpreting the

11

"purposeful availment" prong of the *Mohasco* test which Michigan also utilizes in analyzing due process with regard to personal jurisdiction. Further, both the Michigan and Tennessee long-arm statutes have been interpreted as reaching as far as the limits imposed by the Due Process Clause of the United States Constitution. *See Green v. Wilson*, 455 Mich. 342, 350, 564 N.W.2d 813 (1997) and *Intera, supra*, 428 F.3d at 616.

2.  Arising From Defendant's Activities

Under the second prong of the *Mohasco* test, the cause of action must arise from the defendant's activities within the forum state. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Bird v. Parsons*, 289 F.3d at 875 (quoting *Compuserve, Inc. v. Patterson, supra*, 89 F.3d at 1267). The Sixth Circuit has characterized this as a "lenient standard" and has noted that causes of action need not "formally" arise from the defendant's contacts. *Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 533, 553 (6th Cir. 2007) (quoting *Bird v. Parsons*, *supra*).

Again, construing the facts in a light most favorable to the Plaintiffs, this test is satisfied here. Plaintiffs' request for a declaratory judgment of no infringement arises out of the Asset Purchase Agreement and Employment Agreement executed by Plaintiff when she sold the assets of ICDP to IDFA. At the crux of this action will be the interpretation of these agreements.

3.  Substantial Connection

The final *Mohasco* factor a court must consider is whether the defendant's activities are so substantially connected with Michigan that the exercise of personal jurisdiction over the defendant is reasonable. *Starbrite Distributing, Inc. v. Excelda Manufacturing Company*, 454 Mich. 302, 312-13, 562 N.W.2d 640 (1997). The Sixth Circuit has held that an inference arises that the third prong of the *Mohasco* test is satisfied if the first and second prongs are met. *Theunissen v. Matthews*, 935 F.2d at 1461. To overcome this inference, the defendant must present a "compelling case that the presence of some other considerations render personal jurisdiction unreasonable." *Starbrite*, 454 Mich at 313 (quoting *Burger King*, 471 U.S. at 477). The Court then must balance the "burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Theunissen*, 935 F.2d at 1462 (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 133 (1987)).

All that Defendant Wilson offers here to support a claim of unreasonableness is her claim that she is a Colorado resident and that she cannot afford to hire an attorney in Michigan to file documents on her behalf. However, the Sixth Circuit has routinely upheld specific jurisdiction in cases where the non-resident defendant is forced to travel to the forum state. *See, e.g., Lanier, supra*, 843 F.2d at 911-12. Moreover, if Defendant wanted representation, she would presumably have to hire an attorney in any forum, whether it be Michigan or Colorado.

On the other hand, both the Plaintiffs and Michigan have a strong interest in

litigating the matter is this state. Plaintiffs allege that the dispute is disrupting their business. As a result, they need to obtain prompt relief. Further, Michigan has an interest in adjudicating disputes where Michigan residents have been harmed. *See, e.g., Starbrite, supra*, 454 Mich. at 313-14. Under these circumstances, the Court finds that the burden on the Defendant does not outweigh the interests of the Plaintiffs and forum state. Accordingly, the Court finds that Defendant has not presented a case that is compelling enough to overcome the inference that the third prong of the *Mohasco* test is satisfied.

In sum, the Court finds that Plaintiffs have presented a *prima facie* case showing that the Michigan long-arm statute applies to Defendant and that exercising personal jurisdiction over her does not violate Due Process.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Dkt. Nos. 3 and 9] is DENIED.

IT IS FURTHER ORDERED that, pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant shall file her Answer to Plaintiff's Complaint within 10 days of the date of this order.

SO ORDERED.

s/Gerald E. Rosen
United States District Judge

Dated: February 7, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2008, by electronic and/or ordinary mail.

                                      s/LaShawn R. Saulsberry
                                      Case Manager