UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IDFA, L.L.C., and
FADI K. BARADIHI,

       Plaintiffs,                 CIVIL ACTION NO. 07-11622

      v.                               DISTRICT JUDGE GERALD E. ROSEN

CAROL ANN WILSON               MAGISTRATE JUDGE VIRGINIA M. MORGAN
and EDWIN SCHILLING,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

       This matter comes before the court on defendant Carol Ann Wilson's Motion for Summary Judgment (D/E #25) and plaintiffs' Motion to Enforce Settlement (D/E #32). For the reasons discussed below, this court recommends that both Wilson's motion and plaintiffs' motion be **DENIED**.

### II. Background

#### A. Factual Background

       As previously described by the Honorable Gerald E. Rosen in his Opinion and Order Denying Wilson's earlier Motion to Dismiss for Lack of Personal Jurisdiction:

> In 1993, Defendant Carol Ann Wilson founded the Institute for Certified Divorce Planners, Inc. ("ICDP") as the company's sole shareholder. A divorce planner is

an individual with a financial background, such as a financial planner or a CPA, who provides clients undergoing a divorce with advice on marital assets and asset division. ICDP designed, developed, marketed and provided educational services, books and computer software programs, to professionals working in the area of divorce. After enrollees in the program completed a training course, they earned the designation "Certified Divorce Planner." At the time, ICDP was the only institute of its kind in North America and purportedly became the leader in the divorce planning industry.

In October 1998, Wilson and Alston Financial Applications, LLC, now known as "IDFA, L.L.C.," entered into an Asset Purchase Agreement for the purchase of all of the assets of ICDP.[1] From its inception and continuing to this date, IDFA has maintained its principal place of business in Southfield, Michigan. Contemporaneously with the execution of the Asset Purchase Agreement, Wilson and IDFA also entered into an Employment Agreement which provided that Wilson would be employed as president of IDFA for a $100,000 annual base salary, plus incentive bonuses for certain marketing activities. As additional consideration, IDFA loaned Wilson $180,000 to assist her in paying off some non-ICDP/IDFA personal debts which was to be repaid to the company by way of IDFA marketing incentive bonuses if Wilson qualified for such bonus incentive payments.[2] Wilson also executed a promissory note evidencing the loan.[3]

Thereafter, although Wilson from time to time would come to work at IDFA's Southfield office, she did most of her work from the company's Boulder, Colorado office. In 1999, however, IDFA eliminated its incentive bonus program. Then, in 2001, IDFA closed its Colorado office. Wilson thereafter left IDFA

---

[1] Upon execution of the Asset Purchase Agreement, Akston Financial Applications, LLC changed its name to "ICDP, LLC". The company thereafter changed its name to IDFA, L.L.C., which is the named principal Plaintiff in this action.

[2] The Employment Agreement set forth the circumstance under which Wilson would qualify for incentive bonus payments and further provided that if she earned such bonuses, 50% of the payment of them would be retained by the company to pay down Wilson's $180,000 loan.

[3] Wilson's promissory note was co-signed by her husband, Emerson Fullmer, who signed the Note both in his individual capacity and as president of Red Mountain Movies, Inc. (Red Mountain Movies was a company owned by Wilson and Fullmer. Fullmer was the company's president and Carol Wilson was its corporate secretary.)

On December 18, 2001, claiming that IDFA's actions made it impossible for her to repay IDFA the $180,000 loan, Wilson, and her co-signatories on the Note, her husband Emerson Fullmer and their company, Red Mountain Movies, Inc., filed a complaint for declaratory relief in Colorado state court against IDFA seeking a judgment relieving them from their duty under the Promissory Note. The case was removed to the U.S. District Court for the District of Colorado. IDFA subsequently filed a Motion to Dismiss for lack of personal jurisdiction and forum non conveniens. The Colorado District Court thereafter ordered the case transferred to the District Court for the Eastern District of Michigan under 28 U.S.C. § 1404(a), principally based on the fact that the Promissory Note explicitly provided that the parties consented to jurisdiction in Michigan if any case arose from the note. The transferred case was assigned to this Court. *See Wilson v. ICDP and John Hantz*,[4] E.D. Mich. No. 02-72274. The case was eventually dismissed after Wilson and her husband filed for Chapter 7 bankruptcy.[5]

With regard to the issues in the present action, prior to entering into the Asset Purchase Agreement with IDFA, Wilson had authored a book Survival Manual for Women in Divorce. The book was published by "ICDP Publishing" in 1990 and was subsequently revised four times. IDFA contends that it was always assumed by the parties that the rights to this book were included in the Asset Purchase Agreement signed by the parties in 1998. Although the book was not explicitly listed in the Agreement, the Agreement includes "intellectual property" among the assets purchased by IDFA and further states that the list of specific assets contained in the Agreement was not exclusive. Additionally, the Employment Agreement executed the same date states with respect to are *in existence* as of this Agreement is executed," but disallows her writing, copyrighting or publishing of any books on a going forward basis. The Employment Agreement further provided that anything Wilson "discovered or invented related to the business of [IDFA]. . . shall be the exclusive property of the Company" and required that Wilson "assign to the Company full and exclusive rights to any such discovery or invention, and to any trademark, copyright or patent to the full end of the term of such trademark, copyright or patent."

---

[4]Hantz was, at the time of the 1998 Asset Purchase Agreement, and is now, the owner of IFDA.

[5]Ultimately, the Bankruptcy Court allowed Wilson to discharge all of her debts, including what she owed to IDFA on the Promissory Note.

>In 2006, Plaintiff Fadi K. Baradhi, the current president of IDFA, authored a book called The IDFA Survival Divorce Guide. Plaintiffs admit that a significant portion of the material in this book was derived from Wilson's Survival Manual for Women in Divorce, all rights to which they claim became theirs upon their purchase of the assets of ICDP. [Opinion and Order Denying Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, pp. 2-5; D/E #10 (internal citations omitted) (footnotes in original)]

**B. Procedural History**

On April 10, 2007, plaintiff filed a complaint against defendant Wilson seeking declaratory relief with respect to certain intellectual property rights and alleging that Wilson had defamed plaintiffs. Specifically, plaintiffs alleged that, while ICDP had purchased the rights to the book entitled Survival Manual for Woman in Divorce, Wilson still filed a grievance alleging copyright infringement against Baradihi after Baradihi, as president of IDFA, authored a book entitled The IDFA Divorce Survival Manual. In Count I of the Complaint, plaintiffs sought declaratory relief with respect to the copyright of Survival Manual for Woman in Divorce. In Count II, plaintiffs allege that Wilson's grievance constituted defamation.

On January 9, 2009, Wilson filed the motion for summary judgment pending before the court (D/E #25). In that motion, Wilson argues that plaintiffs' request for declaratory relief was baseless because the undisputed facts demonstrate that plaintiffs did not buy the rights to Wilson's book during the transactions between the parties. Wilson also argues that plaintiffs' defamation claim is baseless because she never filed a grievance against the plaintiffs for plagiarism and that, even if she had filed such a grievance, the statements were not made with knowledge of their falsity or in reckless disregard of the truth.

On January 30, 2009, plaintiffs filed a response to Wilson's motion for summary judgment (D/E #27). In that response, plaintiffs argue that the motion for summary judgment should be stricken for failing to comply with the court's Scheduling Order. Plaintiffs also argue that the motion should be stricken for failing to comply with the court's local rules. Plaintiffs further argue that plaintiff IDFA, formerly known as ICDP, LLC purchased Wilson's copyright rights and that Wilson committed defamation against plaintiffs. Plaintiffs also assert that, contrary to Wilson's argument, Schilling's interest is not impacted by this lawsuit.

On March 10, 2009, Wilson filed a reply to plaintiffs' response to her motion for summary judgment (D/E #28). In that reply, Wilson argues that her motion was timely and that she did not attempt to confer with plaintiffs prior to filing her motion because it would have been futile. Wilson also argues that plaintiffs failed to produce any evidence that they purchased her intellectual property rights in 1998 or that she committed defamation.

On February 16, 2009, plaintiffs filed a sur-reply to Wilson's reply to their response to her motion for summary judgment (D/E #30). In that sur-reply, plaintiffs reiterated their argument that Wilson has repeatedly failed to timely file her documents or comply with court rules.

On February 27, 2009, plaintiffs filed a motion to enforce settlement or, in the alternative, add a necessary defendant and modify the scheduling order (D/E #32). In that motion, plaintiffs argue that, while a settlement was reached during the scheduling conference before Judge Rosen on August 7, 2008, Wilson has since refused to settle on the terms facilitated by Judge Rosen. Plaintiffs also argue that, in the event the court does not enforce the settlement,

Schilling should be added as a defendant to this lawsuit because his intellectual property rights are at issue and he filed the defamatory grievance against plaintiffs on behalf of himself and Wilson.

On March 18, 2009, Wilson filed a response to plaintiffs' motion (D/E #37).  In that response, Wilson asserts that it was her understanding that she and plaintiffs' counsel discussed the terms on which it would be possible to settle the dispute and that the terms of the agreement would be reduced in writing, the writing would be signed, and that the settlement would become final.  Wilson also asserts that plaintiffs' counsel did not send the proposed settlement agreement until five months had passed and that the proposed settlement agreement contained language Wilson had not agreed to.  Wilson further asserts that she made further attempts to settle on the terms originally discussed, but plaintiffs have refused to do so.  Wilson argues that the scheduling order should not be modified because plaintiffs caused the delay and expiration of deadlines through their inaction and that plaintiffs should not be allowed to bring Schilling in to the lawsuit after they made a tactical decision not to bring a claim against him in the first place and because bringing him into this action would only result in further delay

On March 25, 2009, plaintiffs filed a reply to Wilson's response (D/E #38).  In that reply, plaintiffs argue that Wilson's response should be stricken as untimely.  Plaintiffs also assert that the proposed settlement agreement only contained the terms previously agreed upon and that Wilson had previously indicated that she could get Schilling to consent to the terms, which she was subsequently unable to do.  Plaintiffs also argue that they did not move to have Schilling added as a party earlier in the litigation because of Wilson's representation that Schilling would

consent to the terms of the settlement agreement. Plaintiffs further argue that, pursuant to Fed. R. Civ. P. 21, Schilling could be joined as a party at any time.

On April 22, 2009, this court heard oral arguments on both Wilson's motion for summary judgment and plaintiffs' motion to enforce settlement. On April 29, 2009, this court issued an order stating:

> This matter is before the court on Plaintiffs' Motion to Enforce Settlement and/or to Join Edwin Schilling filed February 27, 2009 (D/E 32). A hearing on the Motion was held before the magistrate judge on April 22, 2009. At oral argument, Plaintiff's counsel agreed to division of the motion. The court will prepare a Report and Recommendation on the issue of whether the purported settlement should be enforced.
>
> However, counsel agreed to permit the court to enter non-dispositive relief on the issue of whether Edwin Schilling, alleged co-author and filer of the administrative complaint at issue, should be joined. After due consideration, the court finds that he is a party who is needed for just adjudication pursuant to Fed. R. Civ. P. Rule 19.
>
> Therefore, IT IS ORDERED that counsel for plaintiff prepare, file and serve an amended complaint on Mr. Schilling forthwith. [D/E #39]

On May 27, 2009, plaintiffs filed an amended complaint seeking declaratory relief and alleging a defamation claim against both Wilson and Schilling (D/E #40).

### III. Discussion

#### A. Plaintiffs' Motion to Enforce Settlement

In plaintiffs' motion to enforce settlement, they assert that a settlement had been reached during the scheduling conference on August 7, 2008 before Judge Rosen and that Wilson has since refused to settle on the terms facilitated by Judge Rosen. In response, Wilson argues that

no final settlement was ever reached and that all settlement proposals plaintiffs made following the conference contained language to which defendant had not agreed.

This court was not present at the scheduling conference and it is difficult to resolve the conflicting assertions made by the parties. However, in light of the arguments made in the briefs and at oral argument, this court finds that plaintiffs have failed to show that any settlement was reached or the exact terms of any settlement that should be enforced against Wilson. Therefore, this court recommends that plaintiffs' motion to enforce settlement be denied. In making that recommendation, this court notes that it has already granted the alternative relief sought in plaintiffs' motion, *i.e.* granting plaintiffs leave to file an amended complaint adding Schilling as a defendant.

### B. Wilson's Motion for Summary Judgment

**1. Standard of Review**

Wilson moves for summary judgment pursuant to Fed. R. Civ. P. 56(b). Fed. R. Civ. P. 56(b) states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### 2. Untimeliness of Motion

As a preliminary matter, this court would note that plaintiffs assert that Wilson's motion for summary judgment should be denied on the basis that it is untimely. Pursuant to the scheduling order in this case, dispositive motions were to be filed by December 31, 2008 (D/E #9). Wilson's motion for summary judgment was docketed on January 9, 2009, but she has provided evidence that she filed her motion on December 23, 2008 (Return Receipt; attached as

an Exhibit to Wilson's Reply to Plaintiffs' Response to Wilson's Motion for Summary Judgment). In light of that evidence, Wilson's motion should not be dismissed as untimely.[6]

### 3. Declaratory Relief

With respect to plaintiffs' claim for declaratory relief, Wilson argues that she is entitled to summary judgment because she and Schilling own the copyright to the Survival Manual for Woman in Divorce. As discussed above, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. Here, Wilson has meant that initial burden by producing evidence supporting her assertion that the copyright was not part of the Asset Purchase Agreement. Specifically, Wilson attaches the Asset Purchase Agreement itself and notes that the book is not listed in Schedule 1.5, which describes the intellectual property purchased in the Asset Purchase Agreement. (Asset Purchase Agreement, p. 38; attached as Exhibit 1 to Wilson's Motion for Summary Judgment) Wilson also provided the original copyright registration for the book, which shows that both Wilson and Schilling possessed the copyright (Copyright Registration; attached as Exhibit 2 to Wilson's for Summary Judgment) and a January 5, 1999 agreement between Wilson and the president of ICDP regarding a revised edition of the book, which provided that Wilson would "retain" the copyright (January 5, 1999 Agreement; attached as Exhibit 3 to Wilson's

---

[6]Plaintiffs also argue that Wilson's motion should be denied because she failed to comply with the applicable local rules. However, given Wilson's *pro se* status, the minor deficiencies in Wilson's motions should be excused. Moreover, this court would note that plaintiffs argued that Wilson failed to comply with the local rules in a sur-reply, which is not a pleading contemplated by either the Federal Rules of Civil Procedure or the Local Rules for the Eastern District of Michigan.

Motion for Summary Judgment). Wilson further provided evidence demonstrating that the revised book provided that Wilson and Schilling owned the copyright. (Book Cover and Copyright Notice Page; attached as Exhibit 4 to Wilson's Motion for Summary Judgment)

In light of the above evidence, Wilson has met her initial burden and, consequently, plaintiffs "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587. Moreover, in doing so, plaintiffs cannot merely rest upon the allegations contained in their complaint and, instead, they must submit evidence demonstrating that material issues of fact exist. Banks, 330 F.3d at 892; Fed. R. Civ. P. 56(e). In this case, plaintiffs assert that parties always presumed that the rights to the book were included among the assets purchased by ICDP and, in support of that assertion, they cite to both the Asset Purchase Agreement and an Employment Agreement made between ICDP and Wilson on the same day. As argued by plaintiff, and as noted by Judge Rosen in the Opinion and Order denying Wilson's Motion to Dismiss, the Asset Purchase Agreement includes "intellectual property" among the assets purchased by IDFA and further states that the list of specific assets contained in the Agreement was not exclusive. (Asset Purchase Agreement, pp. 2, 38; attached as Exhibit 4 to Plaintiffs' Response to Wilson's Motion for Summary Judgment) Moreover, as also noted by Judge Rosen and relied upon by plaintiffs, the Employment Agreement states, with respect to "Book and Product Sales" Wilson can only sell "books, videos and audio tapes that are in existence" at the time the Employment Agreement was executed (Employment Agreement, ¶ 8; attached as Exhibit 6 to Plaintiffs' Response to Wilson's Motion for Summary Judgment) and it is unclear if that provision limits Wilson to selling items that were physically in existence at the

time of the Employment Agreement or if it acknowledges that she retains her copyright with respect to books written prior to the Employment Agreement. Plaintiffs further argue that the provisions in the Employment Agreement providing that any discovery or invention by Wilson related to the business of IDFA would be the exclusive property of IDFA and that Wilson must assign all copyrights to IDFA (Employment Agreement, ¶ 8; attached as Exhibit 6 to Plaintiffs' Response to Wilson's Motion for Summary Judgment) demonstrate that the copyright was purchased, but it seems clear that the provision relied upon by plaintiffs only involves future discoveries or inventions made by Wilson after she became employed by ICDP and those provisions do not provide support for plaintiffs' argument. However, as noted by Judge Rosen and conceded by Wilson, Wilson did not list the alleged copyright as an asset in the bankruptcy case that she filed subsequent to the asset purchase agreement. (Bankruptcy Application, attached as Exhibit 8 to Plaintiffs' Response to Wilson's Motion for Summary Judgment; Opinion and Order Denying Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, p. 5 n. 6 (citing Bankruptcy Application, attached as Exhibit 7 to Plaintiffs' Response to Wilson's Motion to Dismiss)

As discussed above, the court must view the evidence and draw all reasonable inferences in favor of plaintiffs when deciding this motion for summary judgment and summary judgment in favor of Wilson would only be appropriate where the record taken as a whole could not lead a rational trier of fact to find for plaintiffs. Matsushita, 475 U.S. at 587; B.F. Goodrich Co., 245 F.3d at 591-92. Here, Wilson provided evidence demonstrating the absence of a genuine issue of material fact and not all of plaintiffs' evidence has probative value. Nevertheless, in light of the

provision in the Asset Purchase Agreement regarding the purchase intellectual property, the non-exclusivity of the list of specific intellectual property purchased, the ambiguity of the Employment Agreement and Wilson's failure to identify the copyright as an asset in her bankruptcy case, this court finds that a rational trier of fact could find in favor of plaintiffs. Therefore, this court recommends that Wilson's motion for summary judgment be denied with respect to plaintiffs' claim for declaratory relief.

### 4. Defamation

Wilson also argues that she is entitled to summary judgment with respect to plaintiffs' defamation claim. The elements of a defamation action are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication (defamation *per quod*). Kefgen v. Davidson, 241 Mich. App 611, 617 (2000). "A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual." Kefgen, 241 Mich. App. at 617. See also Frohriep v. Flanagan, 278 Mich. App 665, 680-681 (2008). A "qualified privilege extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation." Hall v. Pizza Hut of America, Inc, 153 Mich. App 609, 619 (1986).

"[T]he 'shared interest' privilege ... extends to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty. The privilege embraces not only legal duties but also moral and social obligations." Rosenboom v. Vanek, 182 Mich. App 113, 117 (1989). See also Harrison v. Arrow Metal Products, Corp, 20 Mich. App 590, 611-612 (1969).

Moreover, if an agent is guilty of defamation, the principal is also liable, so long as the agent was apparently authorized to make the defamatory statement, even though the agent may have exceeded his or her express authority. American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 565-566, 102 S. Ct. 1935, 72 L. Ed. 2d 330 (1982). "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Hydrolevel Corp., 456 U.S. at 566 n. 5 (quoting Restatement (Second) of Agency § 8 (1957)).

In this case, Wilson correctly asserts that she did not file the grievance alleging copyright infringement (Grievance; attached as Exhibit 5 to Wilson's Motion for Summary Judgment and as Exhibit 11 to Plaintiffs' Response to Wilson's Motion for Summary Judgment) and, on the basis of that grievance, argues that she cannot be liable for defamation where she did not make any statement concerning Baradihi. However, as noted by plaintiffs, the grievance was carbon copied to Wilson and Schilling expressly provided in the grievance that he filed it on behalf of both Wilson and himself. Thus, while Schilling filed the grievance, a rational trier of fact could find that Schilling was acting as Wilson's agent when he filed the grievance and, therefore, a

genuine issue of material fact exists with respect to plaintiffs' defamation claim and Wilson is not entitled to summary judgment.[7]

## IV. Conclusion

For the reasons discussed above, the court recommends that defendant Wilson's motion for summary judgment and plaintiffs' motion to enforce settlement be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

---

[7]Wilson also argues that she is entitled to summary judgment because everything in the grievance was true. However, in light of this court's above finding regarding plaintiffs' request for declaratory relief, a genuine issue of material fact also exists with respect to whether the statements in the grievance were false.

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                      S/Virginia M. Morgan
                      Virginia M. Morgan
                      United States Magistrate Judge

Dated: July 14, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties via the Court's ECF System and/or U. S. Mail on July 14, 2009.

                      s/Jane Johnson
                      Case Manager to
                      Magistrate Judge Virginia M. Morgan