UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IDFA, L.L.C., and
FADI K. BARADIHI,

          Plaintiffs,                  CIVIL ACTION NO. 07-11622

          v.                      DISTRICT JUDGE GERALD E. ROSEN

CAROL ANN WILSON              MAGISTRATE JUDGE VIRGINIA M. MORGAN
and EDWIN SCHILLING,

          Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

       This matter comes before the court on defendant Schilling's Motion to Dismiss and/or for

Summary Judgment (D/E #54).  Plaintiffs filed a response in opposition to Schilling's motion

(D/E #59) and Schilling filed a reply to that response (D/E #61).  On September 16, 2009, this

court held a motion hearing on the motion and, for the reasons discussed below, this court now

recommends that Schilling's motion be **GRANTED** due to lack of personal jurisdiction.  In the

alternative, if there is personal jurisdiction over Schilling, this court recommends that Schilling's

motion be granted because plaintiffs failed to state a claim upon which relief can be granted and,

even if they did, Schilling is entitled to summary judgment as a matter of law.

-1-

**II. Background**

      **A. Factual Background**

      According to his affidavit, defendant Edwin Schilling has continuously been a resident of the State of Colorado since 1987 and he currently resides in Aurora, Colorado. (Affidavit of Edwin Schilling, III, ¶ 1; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment) Schilling's affidavit also provides that, to the best of his recollection, he has only been in the State of Michigan three times in his lifetime: in 1982 or 1983 for a vacation and in 1994 and 1999 in order to testify as a retained expert in divorce cases pending in Michigan. (Affidavit of Edwin Schilling, III, ¶ 3; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

      In 1990, Schilling co-authored a book with defendant Wilson entitled <u>The Survival Manual for Women in Divorce</u>. (Affidavit of Edwin Schilling, III, ¶ 4; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment) The book was copyrighted by Schilling and defendant Carol Ann Wilson and published by "ICDP Publishing" in 1990. (Affidavit of Edwin Schilling, III, ¶ 4; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment) Subsequent editions of the book were also published. (Affidavit of Edwin Schilling, III, ¶ 4; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment) According to his affidavit, Schilling did receive some royalties from the sale of <u>The Survival Manual for Women in Divorce</u>, but he has no knowledge as to what states the book may have been sold. (Affidavit of Edwin Schilling, III, ¶ 11; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

-2-

In 1993, Wilson founded the Institute for Certified Divorce Planners, Inc. ("ICDP") as the company's sole shareholder. (Affidavit of Edwin Schilling, III, ¶ 5; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment; Affidavit of Fadi Baradihi, ¶ 5; attached as Exhibit 1 to Plaintiffs' Response) According to plaintiff Fadi Baradihi's affidavit, a divorce planner is an individual with a financial background, such as a financial planner or a certified public accountant, who provides clients undergoing a divorce with advice on marital assets and asset division. (Affidavit of Fadi Baradihi, ¶ 4; attached as Exhibit 1 to Plaintiffs' Response) Schilling states in his affidavit that he was never an employee of ICDP, nor did he ever have any ownership interest in ICDP. (Affidavit of Edwin Schilling, III, ¶ 6; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment) Schilling would, however, serve as presenter at several seminars sponsored by the ICDP. (Affidavit of Edwin Schilling, III, ¶ 12; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

In October 1998, Wilson and Akston Financial Applications, LLC, now known as "IDFA, L.L.C.," entered into an Asset Purchase Agreement for the purchase of all of the assets of ICDP.[1] (Asset Purchase Agreement; attached as Exhibit 2 to Plaintiffs' Response; Affidavit of Fadi Baradihi, ¶ 6; attached as Exhibit 1 to Plaintiffs' Response) At the same time, Wilson and IDFA also entered into an Employment Agreement which provided that Wilson would be employed as president of IDFA for a $100,000 annual base salary, plus incentive bonuses for

---

[1]Upon execution of the Asset Purchase Agreement, Akston Financial Applications, LLC changed its name to "ICDP, LLC". The company thereafter changed its name to IDFA, L.L.C., which is the named principal plaintiff in this action.

certain marketing activities.  (Employment Agreement; attached as Exhibit 3 to Plaintiffs'

Response; Affidavit of Fadi Baradihi, ¶ 8; attached as Exhibit 1 to Plaintiffs' Response)  As

additional consideration, IDFA loaned Wilson $180,000 to assist her in paying off some

non-ICDP/IDFA personal debts which was to be repaid to the company by way of IDFA

marketing incentive bonuses if Wilson qualified for such bonus incentive payments.

(Employment Agreement; attached as Exhibit 3 to Plaintiffs' Response)

   According to his affidavit, Schilling was not involved in the transaction and he never

signed an instrument of conveyance, or a note or memorandum which purported to have sold or

transferred his rights protected by federal copyright law to The Survival Manual for Women in

Divorce to Akston Financial Applications or IDFA, LLC; to IDFA, L.L.C. f/k/a ICDP, L.L.C.; to

Fadi K. Baradihi; to Carol Ann Wilson or to the Institute for Certified Divorce Planners or

"ICDP;" or to any other individual or business entity.  (Affidavit of Edwin Schilling, III, ¶ 9;

attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

Schilling's affidavit also provides that he has never had an agent who was duly authorized to

sign an instrument or conveyance or a note or memorandum which purports to have sold or

transferred his rights protected by federal copyright law to The Survival Manual for Women in

Divorce to any individual or business entity.  (Affidavit of Edwin Schilling, III, ¶ 10; attached as

Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

   After the sale, Wilson worked for IDFA until 2001.  (Affidavit of Fadi Baradihi, ¶ 8;

attached as Exhibit 1 to Plaintiffs' Response)  Schilling's affidavit states that he was never an

employee of Akston Financial Applications, LLC or IDFA, L.L.C., but that Wilson continued to

request that Schilling serve as a presenter at several seminars sponsored by IDFA.  (Affidavit of Edwin Schilling, III, ¶¶ 7, 12; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)  Schilling's affidavit also states that complied with that request until approximately 2001 and that (1) none of the seminars were held in Michigan and (2) all of Schilling's business dealings with IDFA regarding presentations were held at, or were conducted from, IDFA's Boulder, Colorado office.  (Affidavit of Edwin Schilling, III, ¶ 12; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)  Schilling's affidavit further provides that, to the best of his knowledge, he did not receive any royalties from the sale of 1999 Edition of The Survival Manual for Women in Divorce published in 1999 by IDFA. (Affidavit of Edwin Schilling, III, ¶ 11; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

In 2006, plaintiff Baradihi, the current president of IDFA, authored a book called The IDFA Survival Divorce Guide.  (Affidavit of Fadi Baradihi, ¶ 12; attached as Exhibit 1 to Plaintiffs' Response)  On November 15, 2006, Schilling filed a written complaint with the Certified Financial Planner Board of Ethics ("CFP Board") in Colorado against Baradihi for plagiarism.  (Affidavit of Edwin Schilling, III, ¶ 18; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)  No similar complaint was ever made by Schilling against Baradihi in any other state.  (Affidavit of Edwin Schilling, III, ¶ 18; attached as Exhibit C to Schilling's Motion to Dismiss and/or for Summary Judgment)

### B. Procedural History

On April 10, 2007, plaintiffs filed a complaint against defendant Wilson seeking declaratory relief with respect to certain intellectual property rights and alleging that Wilson had defamed plaintiffs.  Specifically, plaintiffs alleged that, while ICDP had purchased the rights to the book entitled The Survival Manual for Woman in Divorce, Wilson still filed a grievance alleging copyright infringement against Baradihi after Baradihi, as president of IDFA, authored a book entitled The IDFA Divorce Survival Manual.  In Count I of the Complaint, plaintiffs sought declaratory relief with respect to the copyright of The Survival Manual for Woman in Divorce. In Count II, plaintiffs allege that Wilson's grievance constituted defamation.

On January 9, 2009, Wilson filed a motion for summary judgment (D/E #25).  In that motion, Wilson argued that plaintiffs' request for declaratory relief was baseless because the undisputed facts demonstrated that plaintiffs did not buy the rights to Wilson's book during the transactions between the parties.  Wilson also argued that plaintiffs' defamation claim was baseless because she never filed a grievance against the plaintiffs for plagiarism and, even if she had filed such a grievance, the statements were not made with knowledge of their falsity or in reckless disregard of the truth.

On January 30, 2009, plaintiffs filed a response to Wilson's motion for summary judgment (D/E #27).  In that response, plaintiffs argued that the motion for summary judgment should be stricken for failing to comply with the court's Scheduling Order.  Plaintiffs also argued that the motion should be stricken for failing to comply with the court's local rules.  Plaintiffs further argued that IDFA purchased Wilson's copyright and that Wilson committed defamation

-6-

against plaintiffs. Plaintiffs also asserted that, contrary to Wilson's argument, Schilling's interests were not impacted by this lawsuit.

On March 10, 2009, Wilson filed a reply to plaintiffs' response to her motion for summary judgment (D/E #28). In that reply, Wilson argued that her motion was timely and that she did not attempt to confer with plaintiffs prior to filing her motion because it would have been futile. Wilson also argued that plaintiffs failed to produce any evidence that they purchased her intellectual property rights in 1998 or that she committed defamation.

On February 16, 2009, plaintiffs filed a sur-reply to Wilson's reply to their response to her motion for summary judgment (D/E #30). In that sur-reply, plaintiffs reiterated their argument that Wilson has repeatedly failed to timely file her documents or comply with court rules.

On February 27, 2009, plaintiffs filed a motion to enforce settlement or, in the alternative, add a necessary defendant and modify the scheduling order (D/E #32). In that motion, plaintiffs argued that, while a settlement was reached during the scheduling conference before Judge Rosen on August 7, 2008, Wilson had since refused to settle on the terms facilitated by Judge Rosen. Plaintiffs also argued that, in the event the court does not enforce the settlement, Schilling should be added as a defendant to this lawsuit because his intellectual property rights are at issue and he filed the defamatory grievance against plaintiffs on behalf of himself and Wilson.

On March 18, 2009, Wilson filed a response to plaintiffs' motion (D/E #37). In that response, Wilson asserted that it was her understanding that she and plaintiffs' counsel discussed

-7-

the terms on which it would be possible to settle the dispute and that the terms of the agreement would be reduced in writing, the writing would be signed, and that the settlement would only then become final.  Wilson also asserted that plaintiffs' counsel did not send the proposed settlement agreement until five months had passed and that the proposed settlement agreement contained language Wilson had not agreed to.  Wilson further asserted that she made further attempts to settle on the terms originally discussed, but plaintiffs had refused to do so.  Wilson argued that the scheduling order should not be modified because plaintiffs caused the delay and expiration of deadlines through their inaction and that plaintiffs should not be allowed to bring Schilling in to the lawsuit after they made a tactical decision not to bring a claim against him in the first place.

On March 25, 2009, plaintiffs filed a reply to Wilson's response (D/E #38).  In that reply, plaintiffs argued that Wilson's response should be stricken as untimely.  Plaintiffs also asserted that the proposed settlement agreement only contained the terms previously agreed upon and that Wilson had previously indicated that she could get Schilling to consent to the terms, which she was subsequently unable to do.  Plaintiffs also argued that they did not move to have Schilling added as a party earlier in the litigation because of Wilson's representation that Schilling would consent to the terms of the settlement agreement.  Plaintiffs further argue that, pursuant to Fed. R. Civ. P. 21, Schilling could be joined as a party at any time.

On April 22, 2009, this court heard oral arguments on both Wilson's motion for summary judgment and plaintiffs' motion to enforce settlement. On April 29, 2009, this court issued an order stating:

> This matter is before the court on Plaintiffs' Motion to Enforce Settlement and/or to Join Edwin Schilling filed February 27, 2009 (D/E 32). A hearing on the Motion was held before the magistrate judge on April 22, 2009. At oral argument, Plaintiff's counsel agreed to division of the motion. The court will prepare a Report and Recommendation on the issue of whether the purported settlement should be enforced.
>
> However, counsel agreed to permit the court to enter non-dispositive relief on the issue of whether Edwin Schilling, alleged co-author and filer of the administrative complaint at issue, should be joined. After due consideration, the court finds that he is a party who is needed for just adjudication pursuant to Fed. R. Civ. P. Rule 19.
>
> Therefore, IT IS ORDERED that counsel for plaintiff prepare, file and serve an amended complaint on Mr. Schilling forthwith. [D/E #39]

On May 27, 2009, plaintiffs filed an amended complaint seeking declaratory relief and alleging a defamation claim against both Wilson and Schilling (D/E #40). In Count I of that amended complaint, the request for declaratory relief, plaintiffs allege that, while IDFA purchased the copyright to The Survival Manual for Women in Divorce along with the rest of the assets of the Institute for Divorce Planners, Inc. in 1998, defendants still filed a grievance with the Certified Financial Planner Board of Standards, Inc. against Baradihi in Colorado, alleging that his book infringed on the copyright of their alleged book. As relief, plaintiffs request, among other things, (1) a declaration that IDFA owns the intellectual property rights to The

Survival Manual for Women in Divorce; (2) a declaration that plaintiffs have not infringed upon any of defendants' alleged intellectual property rights; and (3) that defendants be enjoined and restrained from all further charges of infringement and acts of enforcement or suit based on copyrights, or any other intellectual property rights, against plaintiffs, or anyone in privity with them.  In Count II of the amended complaint, plaintiffs allege that the grievance filed by defendants accusing plaintiffs of infringing upon defendants' copyright constitutes defamation. As relief, plaintiffs request a judgment against defendants in whatever amount plaintiffs are entitled to, plus interest, costs, attorneys' fees, and exemplary damages, and all other equitable remedies as the court deems appropriate.

On July 14, 2009, this court issued a report and recommendation stating that both Wilson's motion for summary judgment and plaintiffs' motion to enforce settlement should be denied (D/E #45).  Wilson objected to that report and recommendation (D/E #46).  On August 11, 2009, the Honorable Gerald E. Rosen issued an order adopting that report and recommendation (D/E #49).

### C. Motion Pending Before the Court

On August 17, 2009, Schilling filed the motion to dismiss and/or for summary judgment pending before the court (D/E #54).  In that motion, Schilling argues that the claims against him should be dismissed because the court lacks personal jurisdiction over him.  Schilling also argues that the claims against him should be dismissed for failure to state a claim.  Schilling further argues that he is entitled to summary judgment because plaintiffs cannot demonstrate that genuine issues of material fact are in dispute.

-10-

On September 9, 2009, plaintiffs filed a response to Schilling's motion (D/E #59).  In that response, plaintiffs argue that the court has personal jurisdiction over Schilling.  Plaintiffs also argue that plaintiffs have stated a valid claim for declaratory relief against Schilling.  Plaintiffs do concede that their claim of defamation is barred by the applicable statute of limitations, but they also argue that they should be allowed to amend the complaint again in order to add a claim for tortious interference with business relationships.

On September 14, 2009, Schilling filed a reply to plaintiffs' response (D/E #61).  In that reply, Schilling argues that, given plaintiffs' arguments, the request for declaratory relief in Count I with respect to Schilling is now moot and should be dismissed.  Schilling also argues that, while plaintiffs' motion to amend the complaint will be addressed in a separate response, any amendment would be futile.

**III. Discussion**

**A. Personal Jurisdiction**

Schilling first moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(2).  Fed. R. Civ. P. 12(b)(2) provides for dismissal because of "lack of personal jurisdiction."  In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction. Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 549 (6th Cir. 2007); Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989).  Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," Am. Greetings Corp. v. Cohn, 839 F.2d 1164,

1169 (6th Cir. 1988), and "the plaintiff must make only a prima facie showing that personal

jurisdiction exists in order to defeat dismissal," Theunissen v. Matthews, 935 F.2d 1454, 1458

(6th Cir. 1991). In that instance, the pleadings and affidavits submitted must be viewed in a light

most favorable to the plaintiff, and the district court should not weigh "the controverting

assertions of the party seeking dismissal." Theunissen, 935 F.2d at 1459.

Personal jurisdiction over an out-of-state defendant arises from "certain minimum

contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of

fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct.

154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed.

278 (1940)). Depending on the type of minimum contacts in a case, personal jurisdiction can

either be specific or general. Air Products and Controls, Inc., 503 F.3d at 549-550.

In analyzing personal jurisdiction in diversity actions such as this, federal courts must

look to the law of the forum state to determine the reach of the district court's personal

jurisdiction over parties, subject to constitutional due process requirements. Air Products and

Controls, Inc., 503 F.3d at 550. This court, therefore, must engage in a two-step process: (1)

first, the court must determine whether any of Michigan's relevant long-arm statutes authorize

the exercise of jurisdiction over Schilling; and, if so, (2) the court must determine whether

exercise of that jurisdiction comports with constitutional due process. See Intera Corp. v.

Henderson, 428 F.3d 605, 615 (6th Cir. 2005) ("A court's exercise of personal jurisdiction over a

nonresident defendant is appropriate only if it meets the state's long-arm statute and

constitutional due process requirements.").

-12-

For the reasons discussed below, this court finds that Michigan's long-arm statute does not authorize an exercise of jurisdiction over Schilling and that an exercise of jurisdiction over Schilling would not comport with constitutional due process.  Therefore, this court recommends that Schilling's motion to dismiss be granted due to a lack of personal jurisdiction over Schilling.

### 1. Michigan's Long-Arm Statute

Michigan's long-arm statute extends "general" jurisdiction over nonresident individuals pursuant to M.C.L. § 600.701, and "limited" jurisdiction pursuant to M.C.L. § 600.705.

### a. General Jurisdiction

In order to be subject to general jurisdiction in Michigan, a nonconsenting, nonresident individual such as Schilling must have been present in Michigan at the time when process is served or domiciled in Michigan at the time when process is served.  M.C.L. § 600.701.  Neither of those circumstances are present here and plaintiffs make no argument that Michigan's long-arm statute authorizes the exercise of general jurisdiction over Schilling.

### b. Limited Jurisdiction

Michigan's long-arm statute extends "limited" jurisdiction over nonresident individuals pursuant to M.C.L. § 600.705:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

However, "[l]imited jurisdiction extends only to claims arising from the defendant's activities that were either in Michigan or had an in-state effect." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002).

Plaintiffs limit their argument to M.C.L. § 600.705(1), which extends limited personal jurisdiction over a nonresident individual in claims "arising out of the act or acts which create any of the following relationships," including: "[t]he transaction of any business within the state" under § 600.705(1). When construing identical language in M.C.L. § 600.715(1) -- the companion long-arm statute applicable to non-resident corporations -- the Michigan Supreme Court stated that "the word 'any' means just what it says. It includes 'each' and 'every'. . . . It comprehends the 'slightest.'" Lanier v. American Bd. of Endodontics, 843 F.2d 901, 905-06 (6th

-14-

Cir. 1988), cert. denied, 488 U.S. 926 (1988) (quoting <u>Sifers v. Horen</u>, 385 Mich. 195, 199 n. 2

(1971)).  Therefore, the "transaction of any business" necessary for limited personal jurisdiction

under § 600.705(1) is established by "the slightest act of business in Michigan."  <u>Lanier</u>, 843

F.2d at 906.  <u>See</u> <u>also</u> <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 888-889 (6th Cir.

2002) (citing <u>Lanier</u> and holding that the transaction of any business necessary for limited

personal jurisdiction under § 600.705(1) is established by the slightest act of business in

Michigan); <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1464 (6th Cir. 1991) (holding that the

interpretation of the statutory language in M.C.L. § 600.701(1) applies with "equal force to

section 705").

        Here, plaintiffs have failed to present a *prima facie* case that Schilling transacted the

slightest act of business in Michigan.  While Schilling co-authored the book <u>The Survival</u>

<u>Manual for Women in Divorce</u> with Wilson and that book can currently be bought used online

by people in Michigan, (Web Printout; attached as Exhibit 9 to Plaintiffs' Response), there is

simply no evidence that Schilling sold any books in Michigan.  Schilling does concede that, prior

to 1999, he received some royalties from the sale of the book, but he does not know in what

states the book was sold.

        Furthermore, even assuming that possibly receiving royalties from sales of <u>The Survival</u>

<u>Manual for Women in Divorce</u> in Michigan prior to 1999 constitutes the slightest act of business

in Michigan, limited jurisdiction over Schilling would still not be proper under Michigan's long-

arm statute because plaintiffs' claims did not arise out of Schilling's transactions with the state

of Michigan, as required by M.C.L. § 600.705.  While the exact scope of the statutory language

-15-

is unclear, in <u>Flight Devices Corp. v. Van Dusen Air, Inc.</u>, the Sixth Circuit found limited

personal jurisdiction under Ohio's similar long-arm statute where the acts forming the basis for

the defendant's allegedly tortious conduct were "made possible" by the defendant's transaction

of business in Ohio.  <u>Flight Devices Corp.</u>, 466 F.2d 220, 231 (6th Cir. 1972).  Similarly, in

<u>Neogen Corp.</u>, the Sixth Circuit found that the "arising out of" requirement of § 600.715 was

satisfied because the alleged economic harm and trademark infringement that form the basis of

the plaintiff's suit was directly related to the defendant's transaction of business in Michigan.

<u>Neogen Corp.</u>, 282 F.3d at 888.

Here, plaintiffs' amended complaint states that they seek declaratory relief regarding the

copyright of <u>The Survival Manual for Women in Divorce</u> because defendants filed a grievance

alleging copyright infringement with the CFP Board in Colorado while, in the only other count,

plaintiffs allege that the grievance filed in Colorado constituted defamation.  Moreover, while

plaintiffs claim that the publication of defendants' allegedly false allegations of trademark

infringement, filed in Colorado, has resulted in damage to plaintiffs' reputation in the community

and economic loss, they do not associate any economic harm to their allegations in Count I.

### 2. Constitutional Due Process

Even if plaintiffs show that Schilling is subject to Michigan's long-arm statute, they must

still demonstrate that the exercise personal jurisdiction over Schilling by this court comports

with constitutional due process.  <u>Intera Corp.</u>, 428 F.3d at 615.  The Due Process Clause permits

the exercise of both general and specific personal jurisdiction.  <u>City of Monroe Employees</u>

<u>Retirement Sys. v. Bridgestone Corp.</u>, 399 F.3d 651, 665 (6th Cir. 2005); <u>Bird v. Parsons</u>, 289

F.3d 865, 873 (6th Cir. 2002).  A court's "exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that traditional notions of fair play and substantial justice' are not offended.  Intera Corp., 428 F.3d at 615-616 (quotations omitted).

### a. General Jurisdiction

"General jurisdiction exists when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."  Intera Corp., 428 F.3d at 615 (quotation omitted).  In this case, plaintiffs argue that Schilling clearly had continuous contacts with the state as his books are sold in bookstores throughout Michigan.  However, while The Survival Manual for Women in Divorce can be bought used over the internet, Schilling does not personally sell any books in Michigan and, in any event, plaintiffs provide no support for the view that the mere selling of books that a defendant asserts a copyright to constitutes contacts of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.  Schilling's affidavit provides that he has only been to Michigan three times and there is nothing to suggest that he conducts any business or has any significant contacts with the state of Michigan.  As such, this court finds that it does not have general personal jurisdiction over Schilling.

**b. Specific Jurisdiction**

As to the due process inquiry for specific jurisdiction, the Sixth Circuit has established a

three part test for determining whether such jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the
> privilege of acting in the forum state or causing a consequence in
> the forum state. Second, the cause of action must arise from the
> defendant's activities there. Finally, the acts of the defendant or
> consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of
> jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). See also Air Products

and Controls, Inc., 503 F.3d at 550; Intera Corp., 428 F.3d at 615. That test is "based on existing

Supreme Court jurisprudence on personal jurisdiction, primarily International Shoe, and the

approach 'simply applies in a specific fashion the broad rule requiring substantial minimum

contacts as a basis for jurisdiction.'"  Air Products and Controls, Inc., 503 F.3d at 550 (quoting

In- Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 226 (6th Cir. 1972) (abrogated on

other grounds by Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998)).   Moreover, it is often

repeated that purposeful availment is the "sine qua non for in personam jurisdiction.  S. Mach.,

401 F.2d at 381-82.

**i. "Purposeful Availment" Prong**

With respect to the first prong, in order to exercise specific personal jurisdiction over an

out-of-state defendant, that defendant must have purposefully availed himself of "the privilege of

acting in the forum state or causing a consequence in the forum state."  S. Mach., 401 F.2d at

381.  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a

jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'"  Air Products and Controls, Inc., 503 F.3d at 551 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations omitted)).  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State and, where a defendant has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there.  Air Products and Controls, Inc., 503 F.3d at 551 (citing Burger King Corp., 471 U.S. at 475.  Physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."  Burger King, 471 U.S. at 476 (citations omitted).  The Sixth Circuit has also stated that the mere existence of a contract between the defendant and a citizen of the forum state is insufficient to confer specific personal jurisdiction.  Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000).

In this case, plaintiffs argue that Schilling has formed a substantial connection with Michigan by "exploiting" Michigan's business opportunities through the sale of his books.  In support of that argument, plaintiffs attached a printout from the website of Barnes and Noble. (Web Printout; attached as Exhibit 9 to Plaintiffs' Response)  As displayed in that printout, The Survival Manual for Women in Divorce can be purchased used over the internet.  (Web Printout; attached as Exhibit 9 to Plaintiffs' Response)  However, while plaintiffs argue that the book is available in stores across Michigan, there is no evidence of that from the website printout,

-19-

especially as the printout provides that the book is "currently out of stock." (Web Printout; attached as Exhibit 9 to Plaintiffs' Response).

With respect to whether a party's activities rise to the level of purposeful availment, the Sixth Circuit has adopted the "stream of commerce plus" theory set forth in <u>Asahi Metal Indus. Co., Ltd. v. Superior Court</u>, 480 U.S. 102, 111-13, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). <u>See Bridgeport Music, Inc. v. Still N The Water Publ'g</u>, 327 F.3d 472, 479-480 (6th Cir. 2003) ("[W]e make clear today our preference for Justice O'Connor's stream of commerce 'plus' approach ..."). In Justice O'Connor's plurality opinion, she posited that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." <u>Asahi</u>, 480 U.S. at 112, 107 S.Ct. 1026.

The Sixth Circuit has held that an out-of-state defendant purposely directed its activities at the forum state where the defendant manufacturer had a nationwide distribution agreement with a distributor of pharmaceuticals. <u>Tobin v. Astra Pharm. Prod., Inc.</u>, 993 F.2d 528, 544 (6th Cir. 1993). In <u>Tobin</u>, the distribution agreement required the distributor to distribute the defendant's product throughout the "United States of America, its territories and possessions, and Puerto Rico." <u>Tobin</u>, 993 F.3d at 543. The agreement also required the distributor to "regularly consult with [defendant] as to its dealings with the FDA and obtain [defendant's] advice and agreement prior to submitting to the FDA any information to the FDA on the Product, its labeling, package inserts or otherwise." <u>Tobin</u>, 993 F.3d at 543. The court found that this language indicates defendant intended to retain control over the manner in which the distributor marketed its products. <u>Tobin</u>, 993 F.3d at 543.

The Sixth Circuit discussed <u>Tobin</u> in <u>Bridgeport Music, Inc.</u>, 327 F.3d 472, which involved copyright infringement claims where the plaintiff asserted that the defendant had a financial interest in selling records throughout the United States.  <u>Bridgeport Music, Inc.</u>, 327 F.3d at 480. The plaintiff in that case supported its argument by noting that the defendant did not object to its compositions being sold in the forum state, Tennessee, while arguing, based on the rationale set forth in <u>Tobin</u>, that the defendant's conduct constituted purposeful availment. <u>Bridgeport Music, Inc.</u>, 327 F.3d at 480.  In rejecting the <u>Bridgeport</u> plaintiff's argument, the Sixth Circuit held:

> In contrast to <u>Tobin</u>, [defendant's] contacts with Tennessee in the instant action lack the additional element present in <u>Tobin</u>, chiefly, the fact that the <u>Tobin</u> defendants were not merely aware that their distributor was likely to market the product in all fifty states; rather, the parties' contract required it.  Unlike in <u>Tobin</u>, [plaintiff] does not assert that [defendant] entered into a distribution agreement ... that placed an affirmative obligation upon the third party to distribute [defendant's] compositions in [the forum state] or elsewhere.  [Plaintiff] even concedes that ... "how the subject composition is exploited is pretty much out of [defendant's] hands."  [Defendant's] knowledge that [the distributor] was likely to distribute [defendant's] compositions nationally, coupled with its lack of objection to [sales in the forum state], if such sales were ever to occur, is insufficient conduct upon which to predicate purposeful availment.

<u>Bridgeport Music, Inc.</u>, 327 F.3d at 480.

On consideration of the facts before the court, it is apparent that Schilling never purposefully availed himself to personal jurisdiction in Michigan.  There is no suggestion that Schilling ever personally sold books in Michigan and, while there is no evidence regarding any royalties contract or distribution agreement, as the court held in <u>Bridgeport</u>, purposeful availment

-21-

would not established by the fact that Schilling may have known, and did not object to, the book being sold nationally. Schilling's potential receipt of royalties from the sale of the book within Michigan prior to 1999 was not an attempt by Schilling to take advantage of a Michigan market and instead was "the type of random, fortuitous, and attenuated contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." Calphalon, 228 F.3d at 723 (quotations omitted); see Burger King Corp., 471 U.S. at 479. As such, this Court lacks specific personal jurisdiction over Schilling. See S. Mach. Co., 401 F.2d at 381.

Moreover, plaintiffs' evidence that The Survival Manual for Women in Divorce is sold in Michigan, a printout from the Barnes and Noble website indicating that the book can be purchased used over the internet, is insufficient to demonstrate purposeful availment. Plaintiffs' evidence is insufficient as the level of contact with a state that occurs simply from the fact of a website's availability on the Internet is an "attenuated" contact that falls short of purposeful availment. Neogen Corp., 282 F.3d at 890 (citations omitted). The "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first Mohasco factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state,'" Bridgeport Music, Inc., 327 F.3d at 483 (quoting Bird, 289 F.3d at 874; Neogen, 282 F.3d at 890). In this case, however, plaintiffs have not asserted that Schilling hosted or operated a website, much less one that was sufficiently interactive for a finding of purposeful availment. Thus, on that basis as well, plaintiffs have failed to demonstrate the purposeful availment criterion.

Plaintiffs cite to and rely on <u>Lanier v. American Bd. of Endodontics</u>, a case involving a Michigan dentist plaintiff who sued when her attempts to obtain certification from the American Board of Endodontics failed.  843 F.2d 901, 903-04 (6th Cir. 1988).  In that case, the defendant was located in Illinois and only contacted Michigan in order to correspond with the plaintiff regarding her application for certification.  <u>Lanier</u>, 843 F.2d at 903-904.  The Sixth Circuit noted that, for the defendant, the object of the business transaction included "extend[ing] its influence and prestige in Michigan as the principal national determiner of special competence for the practice of endodontics."  <u>Lanier</u>, 843 F.2d at 911.  Accordingly, the court went on to hold that due process allowed Michigan to exercise jurisdiction over the defendant because "the real object of the [defendant's] contacts with Michigan is to have ongoing, far-reaching consequences in the Michigan dental services market.  These consequences are continuous and substantial, affording jurisdiction."  <u>Lanier</u>, 843 F.2d at 911.  Plaintiffs' reliance on <u>Lanier</u> is unpersuasive because the object of Schilling's contacts with whomever he received royalties from was not to "have ongoing, far-reaching consequences" in a Michigan market.

**ii. "Arising From" Prong**

The second prong of the <u>Southern Machine</u> test is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state."  <u>Intera Corp.</u>, 428 F.3d at 617-618 (quoting <u>Calphalon</u>, 228 F.3d at 723).   The Sixth Circuit has:

> articulated the standard for this prong in a number of different ways, such as whether the causes of action were "made possible by" or "lie in the wake of" the defendant's contacts, <u>Lanier</u>, 843 F.2d at 909, or whether the causes of action are "related to" or "connected with" the defendant's contacts with the forum state,

Youn v. Track, Inc., 324 F.3d 409, 419 (6th Cir. 2003) (quoting
Third Nat. Bank in Nashville v. WEDGE Group Inc., 882 F.2d
1087, 1091 n. 2 (6th Cir. 1989)).

Air Products and Controls, Inc., 503 F.3d at 553.  In addition, the Sixth Circuit also characterized

this standard as a "lenient standard" and have explained that the cause of action need not

"formally" arise from defendant's contacts. Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002).

Furthermore, in analyzing the second prong of the Southern Machine test, the Sixth Circuit has

"previously held that 'physical presence is not the touchstone of personal jurisdiction,' and

hence, personal jurisdiction may exist over a defendant although he is not physically present in

the forum if he 'purposefully directs communications into the forum, and those communications

form the 'heart' of the cause of action.'"  Intera Corp., 428 F.3d at 617-618 (quoting Neal, 270

F.3d at 333.

Here, plaintiffs have two causes of action: a claim for declaratory relief and a claim of

defamation.  The declaratory relief requests relates to a copyright of a book sold in Michigan, but

the book was authored by two Colorado residents and nothing in the amended complaint

indicates that the cause of action arises out of Schilling's contacts with the state of Michigan.

Similarly, the allegedly defamatory statements were made in Colorado and there is nothing to

suggest that plaintiffs' second cause of action arises out of Schilling's contacts with the state of

Michigan either.

### iii. "Substantial Connection" Prong

With respect to the third prong of the Southern Machine test, this court would note that

"[i]f prongs one and two of Southern Machine test are satisfied, then there is an inference that

the reasonableness prong is satisfied as well." Intera Corp., 428 F.3d at 618 (citing

CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1268 (6th Cir. 1996))  In this case, however,

because this court finds that plaintiffs have failed to satisfy the "purposeful availment" and

"arising from" requirements of the Southern Machine test, an inference of reasonableness is not

warranted.  The third prong of the Southern Machine test is that "the acts of the defendant or

consequences caused by the defendant must have a substantial enough connection with the forum

state to make the exercise of jurisdiction over the defendant reasonable." S. Mach., 401 F.2d at

381.  This requirement exists because "minimum requirements inherent in the concept of 'fair

play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant

has purposefully engaged in forum activities." Burger King, 471 U.S. at 477-78, 105 S.Ct. 2174

(quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62

L.Ed.2d 490 (1980)).  However, "where a defendant who purposefully has directed his activities

at forum residents seeks to defeat jurisdiction, he must present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable." Id. at 477, 105

S.Ct. 2174.  In determining whether the exercise of jurisdiction is reasonable, the court should

consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of

the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in

securing the most efficient resolution of the policy. Intera Corp., 428 F.3d at 618.

Here, Schilling would be substantially burdened if he was compelled to litigate this case

in Michigan given the fact that he resides in the state of Colorado.  Yet, the Sixth Circuit has

"deemed specific jurisdiction to be proper even when a defendant would be compelled to travel."

Intera Corp., 428 F.3d at 618.  See also Youn v. Track, 324 F.3d 409, 420 (citing Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 911-12 (6th Cir. 1988) (permitting personal jurisdiction in Michigan over Illinois defendant).  Second, Michigan would have a strong interest in exercising jurisdiction over Schilling because plaintiffs are residents of Michigan, which would have an interest in "protecting its residents' legal options."  Youn, 324 F.3d at 419.  Nevertheless, the fact that Schilling did not make his allegedly defamatory statements or author the book within the geographical confines of Michigan appears to diminish the state's purported strong interest. Third, plaintiffs have a substantial interest in obtaining relief.  Fourth, given the fact that the alleged defamatory statements were made in Colorado it appears that the state of Colorado may have a strong interest in resolving this controversy.  With respect to plaintiffs' claim for declaratory relief, the copyright at issue is the same across the country and it appears that any and all states have the same interest.

Viewing those factors together, an exercise of jurisdiction in this case over Schilling would not be reasonable.  Minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction and, in this case, those minimum requirements have not been met.

### 3. Conclusion on Personal Jurisdiction

As discussed above, in analyzing personal jurisdiction in diversity actions such as this, federal courts must engage in a two-step process: (1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Schilling; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with

-26-

constitutional due process.  See  Intera Corp., 428 F.3d at 615.  In this case, for the reasons

discussed above, this court finds that Michigan's long-arm statute does not authorize an exercise

of jurisdiction over Schilling and that an exercise of jurisdiction over Schilling would not

comport with constitutional due process.  Therefore, this court recommends that Schilling's

motion to dismiss be granted due to a lack of personal jurisdiction over

**B. Failure to State a Claim / Summary Judgment**

**1. Standards of Review**

**a. Dismissal**

Schilling moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Fed. R. Civ. P.

12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 8(a)(2) of the Federal Rules of Civil

Procedure a complaint must provide "a short and plain statement of the claim showing that the

pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and

the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957) and Fed. R. Civ. P. 8(a)(2)).  While this notice pleading standard does require

not require "detailed" factual allegations, it does require more than the bare assertion of legal

conclusions.  See Twombly, 550 U.S. at 555.  "[C]ourts 'are not bound to accept as true a legal

conclusion couched as a factual allegation.'"  Twombly, 550 U.S. at 555.  Rule 8 "demands more

than an unadorned, the defendant-unlawfully-harmed me accusation."  Ashcroft v. Iqbal, No.

07-1015, --- U.S. ----, 2009 WL 1361536, at *12 (U.S. May 18, 2009).  "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, --- U.S. ----, at ----, 129 S.Ct. 1937, 173 L.Ed.2d 868, 2009 WL 1361536, at * 12 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, --- U.S. ----, at ----, 129 S.Ct. 1937, 173 L.Ed.2d 868, 2009 WL 1361536, at * 12 (quoting Twombly, 550 U.S. at 557).

Generally, when considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, --- U.S. ----, at ----, 129 S.Ct. 1937, 173 L.Ed.2d 868, 2009 WL 1361536, at * 13. Claims survive a Rule 12(b)(6) motion only where the "factual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555.

The United States Supreme Court's recent decision in <u>Iqbal</u> emphasized that a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [<u>Twombly</u>, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u>, at 557.

*4 --- U.S. ----, at ----, 129 S.Ct. 1937, 173 L.Ed.2d 868, 2009 WL 1361536, at * 12.. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]" - "that the pleader is entitled to relief." <u>Iqbal</u>, --- U.S. ----, at ----, 129 S.Ct. 1937, 173 L.Ed.2d 868, 2009 WL 1361536, at * 13 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In evaluating a motion to dismiss, a court generally is limited to the complaint and the exhibits attached thereto. <u>See</u> <u>Amini v. Oberlin Coll.</u>, 259 F.3d 493, 502 (6th Cir. 2001); <u>see also</u> <u>Barany-Snyder v. Weiner</u>, 539 F.3d 327, 332 (6th Cir. 2008).

**b. Summary Judgment**

Schilling moves for summary judgment pursuant to Fed. R. Civ. Pro. 56(b).  Fed. R. Civ. Pro. 56(b) states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**2. Count I**

In Count I of their amended complaint, claim for declaratory relief, plaintiffs seek declarations that (1) IDFA owns the intellectual property rights to The Survival Manual for Women in Divorce; and (2) plaintiffs have not infringed upon any of defendants' alleged intellectual property rights. As further relief, plaintiffs request that defendants be enjoined and restrained from all further charges of infringement and acts of enforcement or suit based on copyrights, or any other intellectual property rights, against plaintiffs, or anyone in privity with them.

In response to those allegations, Schilling argues that plaintiffs have failed to state a claim for declaratory relief with respect to their request that IDFA owns the intellectual property rights to The Survival Manual for Women in Divorce because plaintiffs make absolutely no allegation in their amended complaint that they purchased or obtained Schilling's copyrights to this manual. As argued by Schilling, the amended complaint acknowledges that Schilling and Wilson co-authored and copyrighted The Survivor Manual for Women in Divorce in 1990 while being is devoid of any allegations that plaintiffs obtained Defendant Schilling's copyright either through sale, transfer or assignment. As such, any request for a declaration that plaintiffs exclusively possess the copyright to the book or that Schilling does not have a copyright interest in the book must fail. Plaintiffs do not dispute that they failed to state a claim that Schilling no longer has an interest in the book at issue or that they exclusively own the copyright. Instead,

-31-

plaintiffs assert that they are only seeking to have this court rule that Wilson's copyright in <u>The Survival Manual for Women in Divorce</u> was purchased by plaintiffs in the Asset Purchase Agreement.  Such a claim does not involve Schilling and, therefore, plaintiffs' claim regarding ownership of the copyright fails to state a claim against Schilling upon which relief can be granted.[2]

Schilling's motion does not directly address plaintiff's request for a declaration that plaintiffs have not infringed upon any of defendants' alleged intellectual property rights. However, he does argue that plaintiffs lack standing to bring any other claim.  To satisfy "the irreducible constitutional minimum of standing" under Article III, a plaintiff must make three showings: (1) an injury in fact-meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged actions-meaning that the injury is fairly traceable to the defendants' conduct; and (3) a likelihood that the injury will be redressed by a favorable decision-meaning that the prospect of obtaining relief from a favorable ruling is not speculative.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  "[T]he party invoking federal jurisdiction bears the burden of establishing these elements."  <u>Lujan</u>, 504 U.S. at 561, 112 S.Ct. 2130.  Each standing element "must be

---

[2]To the extent plaintiffs do state a claim, the evidence submitted by Schilling demonstrates that he co-authored <u>The Survival Manual for Women in Divorce</u> and retained a copyright to it.  Plaintiffs do not dispute that evidence.  Therefore, there is no genuine issue of material fact with respect to any claim that plaintiffs exclusively possess the copyright to the book or that Schilling does not have a copyright interest in the book and Schilling would therefore be entitled to summary judgment on any such claim.

supported in the same way as any other matter on which the plaintiff bears the burden of proof,

*i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."

Lujan, 504 U.S. at 561.[3]

  With respect to standing, plaintiffs argue that they have standing and Schilling is

necessary in the declaratory action because he may later file an action against plaintiffs seeking

declaratory relief that he is the exclusive owner of the copyright or because there may be

agreements in existence between Schilling and Wilson regarding the copyright to The Survival

Manual for Women in Divorce.[4]  However, there is absolutely nothing in the record suggesting

that Schilling asserts exclusive ownership of the copyright or the existence of agreements

between Schilling and Wilson regarding the copyright to The Survival Manual for Women in

Divorce.

  Plaintiffs' amended complaint does clearly allege that Schilling filed a grievance with the

CFP Board for copyright infringement (Amended Complaint, ¶ 17) and such a grievance would

---

[3]Moreover, the Declaratory Judgment Act only gives federal courts discretion to "declare
the rights and other legal relations of any interested party seeking such declaration, whether or
not further relief is or could be sought" in "a case of actual controversy[.]" 28 U.S.C. § 2201.  In
general, the decision to exercise jurisdiction over a declaratory judgment action depends on
whether the declaratory relief requested "'will serve a useful purpose in clarifying and settling
the legal relationships in issue' and whether it 'will terminate and afford relief from the
uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Aetna Cas. & Sur. Co.
v. Sunshine Corp.,  74 F.3d 685, 687 (6th Cir. 1996) (quoting Grand Trunk W. R.R. Co. v.
Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)).

[4]Plaintiffs also note that this court previously ordered Schilling be added to this lawsuit
as a necessary party pursuant to Fed. R. Civ. P. 19, but that order was made in light of plaintiffs'
arguments that they were seeking a declaration that they possess an exclusive copyright over The
Survival Manual for Women in Divorce and that Schilling's intellectual property rights were at
stake, which is no longer the case.

constitute an particularized and actual injury, leading to an actual controversy, that a federal

court could issue a declaratory judgment with respect to.  Therefore, plaintiffs stated a claim

upon which relief can be granted against Schilling by alleging that Schilling filed a grievance for

copyright infringement with the CFP Board and requesting a declaration that plaintiffs have not

infringed upon any of defendants' alleged intellectual property rights.  However, while plaintiffs

may have stated a proper claim, the undisputed evidence regarding that claims demonstrates that

Schilling would be entitled to summary judgment due to plaintiffs' lack of standing.  According

to Schilling's affidavit, his grievance alleged an ethical violation of plagiarism rather than

copyright infringement.  (Affidavit of Edwin Schilling III, ¶¶ 16-18)  Plaintiffs do not dispute

that evidence or provide any evidence that Schilling has otherwise questioned the validity of

plaintiffs' copyright to The Survival Manual for Women in Divorce.  Plagiarism is "[t]he

deliberate and knowing presentation of another person's original ideas or creative expressions as

one's own." Black's Law Dictionary (8th ed. 2004).  Schilling has charged with Baradihi with

that ethical violation, rather than the legal doctrine of copyright infringement, and the grievance

itself does not provide plaintiffs with standing to request a  a declaration that plaintiffs have not

infringed upon any of defendants' alleged intellectual property rights.  Therefore, Schilling is

entitled to summary judgment with respect to plaintiffs' request for a declaration that they did

not infringe on Schilling's copyright.

Schilling also argues that plaintiffs' request for declaratory relief is outside of the

applicable statute of limitations.  The claim for declaratory relief in Count I involves a copyright

and Section 301 of the Copyright Act broadly preempts state law claims while vesting exclusive

jurisdiction over such preempted copyright claims in the federal courts.  17 U.S.C. § 301(a).

Section 301 of the Copyright Act states that "all legal or equitable rights that are equivalent to

any of the exclusive rights within the general scope of copyright as specified in § 106 in works

of authorship that ... come within the subject matter of copyright ... are governed exclusively by

this title.... [N]o person is entitled to any such right or equivalent right in any such work under

the common law or statutes of any State."  17 U.S.C. § 301(a).  As found by the Sixth Circuit:

> The Copyright Act is unusually broad in its assertion of federal
> authority.  Rather than sharing jurisdiction with the state courts as
> is normally the case, the statute expressly withdraws from the state
> courts any jurisdiction to enforce the provisions of the Act and
> converts all state common or statutory law "within the general
> scope of copyright" into federal law to be uniformly applied
> throughout the nation.

Ritchie v. Williams, 395 F.3d 283, 285-286 (6th Cir. 2005).

Pursuant to the Copyright Act, "[n]o civil action shall be maintained under the provisions

of this title unless it is commenced within three years after the claim accrued.."  17 U.S.C.

§507(b).  Moreover, in closer relationships, such as when the parties are alleged co-authors or

alleged co-owners of the copyright, the statutory period for any action to establish ownership

begins to run whenever there is a "plain and express repudiation" of ownership by one party as

against the other.  Ritchie, 395 F.3d at 289 n. 5 (citing to Aalmuhammed v. Lee, 202 F.3d 1227,

1230-31 (9th Cir. 2000); Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996).  In Ritchie, the

defendant's ownership claim was untimely because the plaintiff had expressly told the

defendants, in a letter, that he had exclusive ownership of the songs he had written.  Ritchie, 395

F.3d at 288.  Specifically, the Ritchie Court noted that the plaintiff's letter "made it clear that he

regarded the songs he had written as his songs" and subsequently "claimed exclusive ownership" of the rights to those songs.  <u>Ritchie</u>, 395 F.3d at 288.  Accordingly, the Sixth Circuit concluded that the plaintiff's letter constituted a plain and express repudiation of defendant's ownership claim and started the three-year-statute-of-limitations period..  <u>Ritchie</u>, 395 F.3d at 288.

In this case, there does not appear to have been a "plain and express repudiation" of ownership by Schilling or Wilson as against IDFA prior to this case being filed.  The grievance filed with the CFP Board on November 15, 2006 could be construed as a repudiation of ownership, but it only alleges an ethical violation of plagiarism.  In any event, plaintiffs amended their complaint to add Schilling on May 27, 2009 and Schilling was served with this lawsuit on July 13, 2009.  Both of those dates fall within the three years from when this claim accrued on December 15, 2006 and, therefore, Count I of plaintiffs' complaint is not barred by the applicable statute of limitations.

### c. Count II

In Count II of plaintiffs' amended complaint, they allege that Schilling committed defamation when he filed the grievance with the CFP Board.  The elements of a defamation action are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication (defamation *per quod*).  <u>Kefgen v. Davidson</u>, 241 Mich. App 611, 617 (2000).

2:07-cv-11622-GER-VMM   Doc # 68   Filed 11/18/09   Pg 37 of 38   Pg ID 1412

In this case, Schilling argues that plaintiffs' defamation claim against him is barred by the applicable statute of limitations.  In diversity jurisdiction cases such as this, the substantive law of the forum state is applied, see Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir. 2003), and a state's statute of limitations is substantive law, see Richard v. Ray, 290 F.3d 810, 812

(6th Cir. 2002).  Moreover, defamation claims in Michigan are subject to a one-year statute of limitations.  See M.C.L. §§ 600.5805(1) and (9); Mitan v. Campbell, 474 Mich. 21, 24-25 (2005).  A defamation claim accrues pursuant to Michigan statute when "the wrong upon which the claim is based was done regardless of the time when damage results."  M.C.L. § 600.5827.

Here, plaintiffs' defamation first accrued when the alleged defamatory complaint was filed with the CFP Board on November 15, 2006.  Plaintiffs filed suit against Schilling on May 27, 2009, more than a year after their claim first accrued, and plaintiffs' cause of action for defamation against Schilling is barred by Michigan's statute of limitations.  Plaintiffs concede in their response that the claim for defamation is so barred.

**IV. Conclusion**

For the reasons discussed above, the court recommends that Schilling's motion be **GRANTED** due to lack of personal jurisdiction.  In the alternative, if there is personal jurisdiction over Schilling, this court recommends that Schilling's motion be granted because plaintiffs failed to state a claim upon which relief can be granted and, even if they did, Schilling is entitled to summary judgment as a matter of law.

-37-

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: November 18, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Carol Wilson via the Court's ECF System and/or U. S. Mail on November 18, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan